Ryan C. Bykerk (SBN 274534)
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, CA 90067-2121
Tel: (310) 586-7700; Fax: (310) 586-7800
bykerkr@gtlaw.com

Teresa T. Thompson (*pro hac vice application forthcoming*)
Melissa R. Hodge (*pro hac vice application forthcoming*)
FREDRIKSON & BYRON, P.A.
200 South Sixth Street, Suite 4000
Minneapolis, MN  55402-1425
Tel: (612) 492-7000; Fax: (612) 492.7077
tthompson@fredlaw.com
mhodge@fredlaw.com

Attorneys for Plaintiffs
Medtronic, Inc. and Medtronic USA, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Medtronic, Inc. and Medtronic USA, Inc.,<br><br>            Plaintiffs,<br><br>     vs.<br><br>Kemp Stanford and Globus Medical, Inc.<br><br>            Defendants. | Case No:  8:22-cv-1414<br><br>**PLAINTIFF'S COMPLAINT FOR BREACH OF CONTRACT, TORTIOUS INTERFERENCE WITH CONTRACT, AND UNFAIR COMPETITION**<br><br><u>JURY TRIAL DEMAND</u> |

COMPLAINT

For their Complaint against Defendants Kemp Stanford and Globus Medical, Inc. (collectively "Defendants"), Plaintiffs Medtronic, Inc. and Medtronic USA, Inc. (collectively "Medtronic" or "Plaintiffs") state and allege as follows:

## NATURE OF ACTION

1. Defendant Kemp Stanford ("Stanford") signed a fixed-term employment contract with Medtronic, agreeing to employment with Medtronic through May 2024. He breached his fixed-term employment contract when he resigned in July 2022 to accept an offer of employment from Defendant Globus Medical, Inc. ("Globus").

2. Through its offer of employment to Stanford, Globus intended to unlawfully induce Stanford to break his fixed-term employment contract with Medtronic. Globus was undeterred by Medtronic's communications regarding Stanford's agreement and indicated, not for the first time, that it would "back" employees it had poached from Medtronic.

3. This action is necessary to enforce Medtronic's rights, recover the damages it has suffered as a result of Stanford's breach, hold Stanford and Globus accountable for their wrongful conduct, and prevent Stanford and Globus from continuing their course of wrongful conduct.

## PARTIES

4. Plaintiff Medtronic, Inc. is a Minnesota corporation with its principal place of business in Fridley, Anoka County, Minnesota.

5. Plaintiff Medtronic USA, Inc., a wholly-owned subsidiary of Medtronic, Inc., is a Minnesota corporation with its principal place of business in Fridley, Anoka County, Minnesota.

6. Stanford is a resident of the State of California. Stanford was employed by Medtronic from October 2018 until he resigned and terminated his employment effective July 15, 2022. During his employment with Medtronic, Stanford resided in Tustin, California.

7. Globus is a Delaware corporation with its principal place of business in Pennsylvania. Globus competes with Medtronic in the spine surgery business. Stanford is currently employed by Globus.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. There is complete diversity of citizenship between the parties because Medtronic is a citizen of the state of Minnesota; Globus is a citizen of the states of Pennsylvania and Delaware; and Stanford is a citizen of the state of California, and the amount in controversy exceeds $75,000.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district.

10. This Court has personal jurisdiction over Stanford because he is a resident of California and breached his contract by resigning his employment with Medtronic in California.

11. This Court has personal jurisdiction over Globus because Globus intentionally and tortiously interfered with Medtronic's contract with Stanford in California. Globus also transacts business, employs sales employees, and has a registered agent in California.

## BACKGROUND

### Medtronic's Cranial and Spinal Technologies Operating Unit

12. Medtronic is a global healthcare solutions company committed to improving lives through medical technologies and services. Medtronic's business is organized into 20 Operating Units that each focus on a narrow disease state or specialty physician type. One of these Operating Units is the Cranial and Spinal Technologies ("CST") Operating Unit.

13. Medtronic's CST Operating Unit sells spinal instruments (such as drills, taps, and screwdrivers) and implants (such as screws and interbody spacers) alongside

Medtronic's imaging, navigation, and robotics systems in an interconnected solution for Medtronic customers called Surgical Synergy™.

### Stanford's At-Will Employment with Medtronic

14. Medtronic first offered Stanford employment as a Case Specialist, Spine Therapies in Tustin, California on August 24, 2018.

15. Medtronic's offer of employment was conditioned on Stanford's execution of a Medtronic Employee Agreement. Stanford accepted Medtronic's offer of employment on August 24, 2018, and in consideration thereof signed the Medtronic Employee Agreement on August 27, 2018. Stanford commenced his employment with Medtronic on October 29, 2018. Originally, his employment was at-will.

16. Within the first year of his employment in Spine Therapies, Medtronic provided Stanford with over one month of training in spinal therapies, spinal instruments and spine surgery products.

17. On September 30, 2019, Medtronic offered Stanford a promotion to Spinal Sales Representative 1-B, which included an increase in compensation and eligibility for participation in the applicable Sales Incentive Program. Medtronic's offer was conditioned on Stanford's execution of a new Medtronic Employee Agreement. On October 9, 2019, Stanford accepted Medtronic's offer and signed the Medtronic Employee Agreement. The Agreement is not materially different from the prior Medtronic Employee Agreement signed by Stanford on August 27, 2018. At that time, his employment remained at-will.

18. On November 16, 2020, Medtronic offered Stanford a promotion to Spinal Sales Representative 2, which included an increase in compensation. Medtronic's offer was conditioned on Stanford's execution of a new Medtronic Employee Agreement. On November 20, 2020, Stanford accepted Medtronic's offer and signed the Medtronic Employee Agreement and an Individual Compensation Agreement Confirmation. The Employee Agreement is not materially different from the prior Medtronic Employee

Agreements signed by Stanford on August 27, 2018 and October 9, 2019. At that time, his employment remained at-will.

19. As a Spinal Sales Representative 2, Stanford was responsible for promoting and selling spinal instruments and implants and providing case coverage within hospitals and medical facilities within the Orange County territory.

20. Employees at the level of Spinal Sales Representative 2 are required to work independently. In order to enable them to do so, Medtronic devotes significant resources into providing its employees with supervised on-the-job training. This training is provided by experienced sales representatives and district managers who have experience with Medtronic's suite of spinal instruments and spine surgery products as well as developed relationships with Medtronic's customers. The training includes becoming fully proficient at operating robotics and navigation equipment, a skill highly valued and sought after in the spinal therapy industry. It generally takes a sales representative up to one and one-half years to become proficient at operating independently in the field.

21. The training Medtronic provides to its employees is recognized for its excellence in the spinal therapy industry. Because well-trained employees are necessary to fill these roles, it is very difficult for Medtronic, and other companies in the spine industry to fill these roles with qualified candidates.

22. Stanford received Medtronic's on-the-job training while working within the Spinal Therapies division and was thus well prepared to operate as an independent Spinal Sales Representative 2. In his territory, Stanford worked with several other sales representatives and a district manager to cover the hospitals and medical facilities in his territory. Indeed, Stanford himself conducted on-the-job training with one of the sales representative colleagues on his team.

### Stanford's Fixed-Term Employment with Medtronic

23. As an integral part of its employment practices, Medtronic negotiates and enters into fixed-term employment contracts in certain circumstances, usually involving

high-performing employees or employees whose departure from Medtronic during the term would pose a hardship. Pursuant to these contracts, Medtronic and the employee agree that the employment relationship will continue for a specified term of years unless terminated for very specified and limited reasons.

24. These fixed-term employment contracts benefit Medtronic employees by providing employment and defined compensation for a definite term. They also provide certainty to Medtronic, assisting with staffing predictability; reducing recruiting, hiring, and training costs; and providing continuity for Medtronic customers with well-trained Medtronic employees during the fixed term in whom Medtronic can reliably invest time and resources, as well as providing the ability to transition customers or train new employees prior to the end of the fixed term as necessary.

25. Stanford was offered a fixed-term employment contract in or around March 2021.

26. Medtronic's offer was conditioned on Stanford's execution of a new Medtronic Employee Agreement ("Employee Agreement") and Term Agreement Addendum (the "Term Agreement"), which Medtronic and Stanford entered into on March 31, 2021.

27. On March 31, 2021, Stanford accepted Medtronic's offer and signed the Employee Agreement and Term Agreement. True and correct copies of the Employee Agreement and Term Agreement are attached hereto as **Exhibits A and B** and incorporated by reference herein. The Employee Agreement is not materially different from the prior Medtronic Employee Agreements signed by Stanford on August 27, 2018, October 9, 2019, and November 20, 2020. Once the parties entered the Term Agreement, Stanford was no longer an at-will employee. The Employee Agreement and Term Agreement were in effect at the time of Stanford's resignation.

28. Prior to Stanford signing the Term Agreement, Stanford's supervisor Jeremy Blain ("Blain") spoke with Stanford about the Term Agreement to be sure Stanford knew that he was committing to stay with Medtronic for a three (3) year period.

Stanford explicitly stated he understood this would limit his ability to leave Medtronic during the three (3) year term of the Term Agreement and was enthusiastic about this Term Agreement, the opportunities of the position, and the compensation.

29. In the Term Agreement, Stanford agreed to be employed by Medtronic for a term of thirty-six continuous months, beginning on May 1, 2021 and ending on April 30, 2024 (the "Term"). (Ex. B, Term Agreement § 3.)

30. Medtronic, on the other hand, agreed to employ Stanford during the thirty-six month period and to provide him guaranteed annual compensation during the Term, in addition to "performance-based awards and programs and any special compensation incentives or protections introduced during the course of the fiscal year, including those performance-based awards, programs and special compensation incentive programs that are not outlined in MEDTRONIC's standard CST Spinal Sales Representative Commission Program." (Ex. B, Term Agreement § 5.)

31. The duration of the Term could only be amended or extended by a mutual written agreement signed by Medtronic and Stanford or terminated in accordance with Section 7 of the Term Agreement.

32. Section 7 provided that the Term Agreement could only be terminated as follows:

>  (a) By mutual written agreement between Employee and MEDTRONIC.
> 
> (b) By MEDTRONIC for "Cause." As used in this subsection, "Cause" means any or all the following:
> 
> > (1) Employee's failure to perform Employee's duties and responsibilities satisfactorily, *provided, however,* that prior to termination of Employee's employment for such unsatisfactory performance, MEDTRONIC will provide Employee with written notice of Employee's deficiencies and Employee will then have thirty (30) calendar days to cure any such deficiencies.

(2) Employee engages in any conduct that, if it were to be prosecuted, would constitute a felony or gross misdemeanor.

(3) Employee engages in any act of theft or other dishonest conduct.

(4) Any other act or omission by Employee that, in the sole and absolute discretion of MEDTRONIC, could materially damage the reputation of MEDTRONIC, MEDTRONIC PRODUCT(s), or CONFIDENTIAL INFORMATION.  This includes any statement made by Employee, including disparaging, derogatory or otherwise negative comments or statements (as determined by MEDTRONIC in its sole discretion) about MEDTRONIC, MEDTRONIC CUSTOMERS, or any of MEDTRONIC'S officers or employees to any person, including specifically, but not limited to, any person affiliated in any way with any actual or potential employee, MEDTRONIC CUSTOMER, vendor or competitor of MEDTRONIC or any member of the medical, business, professional or scientific community with whom MEDTRONIC has had or, to Employee's knowledge, has contemplated a business, professional or scientific relationship.

(5) Employee's falsification of records maintained by MEDTRONIC or submitted to any regulatory body, governmental agency, or insurer.

(6) Employee's violation of any MEDTRONIC policy as provided by the standards of the applicable policy, including, but not limited to, the Code of Conduct, policies that prohibit harassment or other forms of offensive behavior at MEDTRONIC, or other workplace policies; or Employee's violation of the Business Conduct Standards under circumstances which give rise to

           termination under the Medtronic Global Business Conduct Standards Policy or any applicable policy or procedure.

           (7)    Employee's failure to maintain the technical skills and qualifications required to fulfill the duties and responsibilities of the position.

           (8)    Employee's breach of any provision of the MEDTRONIC EMPLOYEE AGREEMENT or of this Addendum thereto.

           (9)    Employee's breach of any terms or conditions of MEDTRONIC's Offer Letter(s) to Employee.

    (c)    Upon the death of Employee.

    (d)    Upon Employee becoming "Disabled." As used in this subsection, Employee is Disabled if Employee suffers a physical or mental impairment that materially limits Employee's one or more major life activities, and Employee cannot perform the essential functions of Employee's position with or without reasonable accommodation by MEDTRONIC.

    (e)    Immediately upon Employee's assignment, with consent of Employee and MEDTRONIC, to a position with MEDTRONIC other than that of CST Spinal Sales Representative.

(Ex. B, Term Agreement § 7.)

        33.    At the time he signed the Term Agreement, Stanford also signed the Employee Agreement which outlined Stanford's obligations to not use or disclose Medtronic's Confidential Information or use that Confidential Information to solicit Medtronic Customers. In the Employee Agreement, Stanford agreed to the following:

    **3.1**    **Employee's Use of Training, Business and Customer Relationships, Goodwill and CONFIDENTIAL INFORMATION.** Employee agrees that in consideration of the promises made by MEDTRONIC to Employee to provide Employee valuable training, business and customer relationships, goodwill and CONFIDENTIAL

INFORMATION, Employee shall, during the course of Employee's employment by MEDTRONIC, use such valuable training, business and customer relationships, goodwill and CONFIDENTIAL INFORMATION solely and exclusively for the benefit of MEDTRONIC.

(Ex. A, Employee Agreement § 3.1.)

### Stanford's Breach and Globus's Tortious Interference

34. Globus is one of Medtronic's competitors in the spine surgery business.

35. Globus's spinal instruments and implants compete directly with Medtronic's spinal instruments and implants. Globus also sells navigation, imaging, and robotics systems that compete with Medtronic's systems and integrate with Globus's spinal instruments and implants to enable surgeons to perform spine surgeries and thus, Globus would greatly benefit from hiring fully-trained Medtronic sales representatives.

36. Even before hiring Stanford, Globus was on notice that Medtronic uses fixed-term employment contracts with employees like Stanford.

37. Globus had offered employment to another Medtronic employee with a Term Agreement similar to Stanford's. The employee had submitted his resignation in March 2020 effective immediately and purported to "rescind [his] acceptance of [his] term agreement addendum to [his] Medtronic employee agreement." Globus was informed by Medtronic of the Term Agreement and was told that Globus would "back" the employee. Globus even countered its previous offer with an increased offer. The employee ultimately honored his term agreement by rejecting the offer and continued employment with Medtronic.

38. On April 28, 2022, Stanford emailed his Term Agreement and his Employee Agreement to his personal email from his Medtronic work email.

39. Two months later, on June 29, 2022, Stanford contacted his manager Blain to relay that Globus had made him an offer of employment and offered to provide two

weeks' notice to Medtronic before joining Globus. The Globus offer was apparently set to expire on June 30, 2022.

40. On June 29, 2022, after learning that Globus had made an offer of employment to Stanford, Medtronic sent Globus an email explaining that Stanford was employed with Medtronic under the Term Agreement through April 30, 2024. Medtronic requested confirmation that Globus would withdraw its offer and not engage in further interference.

41. On June 30, 2022, Globus replied that it did not know what term agreement Medtronic was referring to and disputed that any contract could restrict an employee from seeking and accepting employment with another company in California.

42. Medtronic replied with a copy of Stanford's Term Agreement attached and also included California legal citations supporting the use of fixed-term employment contracts. Medtronic again stated that it expected confirmation that Globus would withdraw its offer.

43. Globus responded that it would not have time to review the Term Agreement or seek advice by Medtronic's deadline.

44. Medtronic reiterated that it understood that Globus was aware of the Term Agreement, reiterated its demand for confirmation of the withdrawal of the offer prior to noon on June 30th, the date Globus had given Stanford to accept the offer. Medtronic indicated that an email to both Globus and Stanford would be forthcoming. A true and correct copy of this June 29-30, 2022 email chain between Medtronic and Globus is attached hereto as **Exhibit C** and incorporated by reference herein.

45. Later on June 30, 2022, Medtronic sent a separate email to both Globus and Stanford explaining that if Globus did not withdraw its offer and/or if Stanford accepted the offer, Medtronic would pursue legal remedies against both. A copy of Stanford's Term Agreement was again attached.

46. The morning of July 1, 2022, Medtronic sent a follow-up email to Globus and Stanford asking whether Stanford had accepted the offer.

47. Blain met with Stanford the morning of July 1, 2022, and Stanford shared that he would be giving his two weeks' notice and was planning to accept the offer with Globus and move to Northern California. Blain relayed that Stanford had almost two years left on his Term Agreement. Stanford told Blain that Globus offered him close to double his compensation at Medtronic for two years to move up to Northern California. Stanford further relayed that Globus had reviewed Stanford's Term Agreement, that Globus was "not worried about it," and, as it had done previously, told Stanford Globus would "back" him. Stanford indicated that he was planning to join Globus on July 18, 2022. While Stanford expressed thanks for the assistance Medtronic and Blain had given him, he noted that since Globus was not concerned with the Term Agreement, he could not pass up the money.

48. On July 1, 2022, Blain sent Stanford an email letting him know that his resignation was received, that his access to Medtronic systems was being discontinued immediately, and that he was relieved of his duties. He was asked to immediately return his Medtronic property. He explained that Medtronic's Legal Department would be addressing issues involving the Term Agreement.

49. Blain sent a second email to Stanford that same day clarifying that Stanford would remain on the payroll during the two-week notice period through July 15, 2022, and under Section 2.3 of his Employee Agreement, could not begin work for Globus until after that date. Among other things, Section 2.3 provides that Stanford would not "be employed by or represent [] other persons or entities in the same or similar business as MEDTRONIC while employed by MEDTRONIC."

50. The afternoon of July 1, 2022, Medtronic sent another email to Globus stating that Stanford had informed Medtronic that he had accepted the position with Globus (in violation of his Term Agreement) and would remain a Medtronic employee through July 15, 2022. A copy of Stanford's California Employee Agreement was attached.

51. At no time did Medtronic agree, by mutual written agreement or otherwise, that the Term Agreement would be terminated. (*See* Ex. B, Term Agreement § 7(a).)

52. Stanford's resignation in violation of the Term Agreement has left an unexpected vacancy in Medtronic's spinal sales team which cannot be easily or economically replaced.

53. On information and belief, Stanford has since begun his employment with Globus.

54. Stanford's abrupt and unlawful resignation of employment in violation of the Term Agreement has caused Medtronic significant damage, including, the loss of contracted services which would have provided Medtronic and its customers with expected stability with a well-trained Medtronic employee in which Medtronic invested significant resources, loss of continued supervision and training for more junior sales representatives on Stanford's team, as well as the costs associated with trying to recruit, hire and train an employee to fill Stanford's role, the increased costs of paying employees to fill Stanford's role, the costs of transitioning and retaining customer relationships served by Stanford, and the potential loss of customers and resulting revenue due to the loss of stability caused by Stanford's abrupt resignation in violation of the Term Agreement.

## CAUSES OF ACTION

## COUNT ONE

### Against Stanford for Breach of Contract

55. Medtronic realleges all and singular paragraphs 1 through 56 hereinabove.

56. Stanford and Medtronic are parties to the Term Agreement, a true and correct copy of which is attached hereto as **Exhibit B**.

57. Fixed-term employment contracts like the Term Agreement are enforceable under California law.

58. All conditions precedent under the Term Agreement have occurred.

59. Section 3 of the Term Agreement is supported by consideration and reasonably protects Medtronic's legitimate business interests.

60. Stanford has breached and repudiated Section 3 of the Term Agreement by resigning his employment with Medtronic before the expiration of his Initial Term.

61. Stanford's breach of the Term Agreement has resulted in actual and potential damages to Medtronic, including without limitation the recruitment, hiring, and training costs for a replacement employee, the difference in salary between Stanford and any replacement employee, the costs of transitioning and retaining customer relationships served by Stanford, and the potential loss of customers and resulting revenue due to the loss of stability caused by Stanford's abrupt resignation in violation of the Term Agreement. Medtronic is entitled to recover damages for breach of the Term Agreement.

62. By reason of the foregoing, Medtronic has suffered and will suffer damages in excess of $75,000, in an amount to be proven at trial.

## COUNT TWO

## Against Globus for Tortious Interference with Contract

63. Medtronic realleges all and singular paragraphs 1 through 64 hereinabove.

64. Stanford and Medtronic are parties to the Employee Agreement and Term Agreement, true and correct copies of which are attached hereto as **Exhibits A and B**.

65. At all relevant times, Globus had actual or constructive knowledge of the Term Agreement.

66. Globus intentionally procured Stanford's breach of the Term Agreement, without justification, by, among other things, offering him employment that violated the Term Agreement, encouraging him to accept such employment, offering him financial inducements to accept such employment, and offering to "back" him in the event Medtronic brought suit for his violation of the Term Agreement.

67. Stanford breached the Term Agreement by resigning his employment with Medtronic.

68. Globus's tortious interference with the Term Agreement has caused and will continue to cause Medtronic injury, including without limitation attorneys' fees and other expenses incurred as a result of being thrust into litigation with Stanford to protect Medtronic's contractual rights; the recruitment, hiring, and training costs for a replacement employee; the difference in salary between Stanford and any replacement employee; the costs of retaining customer relationships, and the loss of revenue from any lost customers.

69. By reason of the foregoing, Medtronic has suffered and will suffer damages in excess of $75,000, in an amount to be proven at trial.

70. Additionally, Globus's tortious interference with Stanford's Term Agreement and its apparent disregard for Medtronic's fixed-term employment contracts more generally threatens Medtronic with irreparable harm, including the risk that Globus will in the future wrongfully interfere with Medtronic's fixed-term agreements by unlawfully inducing Medtronic's well-trained employees to violate their fixed-term agreements to the benefit of Globus and to damage Medtronic. By reason of the foregoing, Medtronic is entitled to injunctive relief restraining Globus from interfering with the Term Agreement and other similar fixed-term employment contracts entered into between Medtronic and Medtronic employees.

## COUNT THREE

### Against Globus for Unfair Competition under California Business and Professions Code §§ 17200 *et seq.*

71. Medtronic realleges all and singular paragraphs 1 through 72 hereinabove.

72. The Unfair Competition Law defines unfair competition to include any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

73. The actions of Globus as alleged constitute unlawful, unfair or fraudulent business practices. Globus has wrongfully competed with Medtronic by soliciting and

offering employment to Stanford with knowledge of his Term Agreement and causing Stanford to breach his Term Agreement.

74. Globus has offered to "back" Medtronic employees on at least two occasions should they be subject to legal action by Medtronic for their breaches and offered significant financial incentives to lure employees to breach their Term Agreements.

75. These wrongful acts have caused and will continue to cause Medtronic injury and damages.

76. Globus's tortious interference with and its apparent disregard for Medtronic's fixed-term employment contracts threatens Medtronic with damages and other irreparable harm, including the risk that Globus will in the future wrongfully interfere with Medtronic's fixed-term agreements by unlawfully inducing Medtronic's well-trained employees to violate their fixed-term agreements to benefit Globus and damage Medtronic. By reason of the foregoing, Medtronic is entitled to injunctive relief restraining Globus from interfering with fixed-term employment contracts entered into between Medtronic and Medtronic employees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Medtronic, Inc. and Medtronic USA, Inc. pray for a judgment in their favor and against Defendants Kemp Stanford and Globus Medical, Inc., and each of them jointly and severally, as follows:

A. Declaring that Stanford's resignation of employment from Medtronic breaches Section 3 of the Term Agreement.

B. Temporarily and permanently enjoining and restraining Globus, and its successors, agents, assigns, and employees, and all persons in active concert or participation with them who receive actual notice of the Court's Order, from causing any Medtronic employee to breach his or her Medtronic fixed-term employment contract by offering employment to such employee that would begin before the expiration of the fixed term, and placing on Globus an affirmative duty to inquire as to

the existence of a fixed-term employment contract for all potential hires who are then-current Medtronic employees.

  C. Awarding Medtronic its damages caused by Defendants' wrongful conduct in an amount greater than $75,000.

  D. Awarding Medtronic its reasonable attorneys' fees, interest, costs, and disbursements to the fullest extent permitted by law.

  E. Awarding Medtronic such other, further, or different relief as the Court may deem just and equitable.

Dated: July 29, 2022

Respectfully submitted,
GREENBERG TRAURIG, LLP

By:  */s/Ryan C. Bykerk*
   Ryan C. Bykerk
   Attorneys for Plaintiffs Medtronic, Inc. and Medtronic USA, Inc.

## DEMAND FOR JURY TRIAL

Medtronic hereby demands a trial by jury of all triable issues raised by this Complaint.

Dated: July 29, 2022

Respectfully submitted,

GREENBERG TRAURIG, LLP

By: /s/Ryan C. Bykerk
Ryan C. Bykerk
Attorneys for Plaintiffs Medtronic, Inc. and Medtronic USA, Inc.